Good morning, your honors. You may please the court. This appeal from an ex parte re-examination presents important questions regarding the relationship between validity proceedings at the Patent Office and validity proceedings in Federal District Court. SRI 338 patent was subject to a vigorous validity challenge in the Delaware District Court. After years of litigation, Judge Robinson presided over a 10-day jury trial there, and at the end of that trial, the jury found that the 338 patent was not anticipated by the prior art. That finding was undisturbed on post-trial motions, and it was undisturbed on a direct appeal to this court. But the same month the jury made that finding, the examiner in the ex parte re-examination rejected the 338 patent claims based on similar validity arguments to those that had been considered in the jury trial. Are you saying that the office should have declined re-examination, should have deferred to what the court did, or just that they should have received the evidence? Just that they should have received the evidence. So that's all, you're not arguing that there was any kind of preclusive effect? Exactly, Your Honor. I think, you know, as a matter of first principles, one might say that the Patent Office should defer, but I think this court's heard some cases on that, and then we don't challenge those cases. Our point is simply that the Patent Office should have considered the evidence from the validity trial and made, if it were going to reach an opposite result to the result that the jury reached, that it should have at least considered the full trial record. When you say, as a matter of first principles, are you talking about the Constitution or some other first principles? The Constitution, Your Honor, and I think, you know, some of the opinions that Your Honor has authored in prior cases. Counsel, the board's failure or refusal to consider the evidence was not based on something tainted about the jury trial evidence or the relationship between the district court and the PTO. It was based simply on a question of timing, because you got caught in a time swing, and the final rejection came in before you had the evidence, the material, the evidence, if you will, that you wanted to bring to the PTO. But there really isn't any question in this case, is there, about the relationship between district courts and PTO? The only question is whether you're entitled to get some evidence in after the final rejection. The kind of evidence it is is not at issue, is it? I think it is, Your Honor. I think on the timing point, you know, originally the office had refused to consider the evidence because it said it was untimely. We then filed a petition and explained why the evidence couldn't have been submitted earlier, based on the timing. And the examiner actually found, in response to that, that it was timely, that we had been diligent, and that's why the examiner let in the limited trial evidence. And so, I don't think there's a timeliness issue, because the examiner himself, on the second pass, found that the limited evidence was timely. I think the question is... Well, timely in the sense of he has the authority to use his discretion, the examiner, to use his discretion and say, oh, okay, even though I gave a fine. I studied your trial timeline fairly closely, because one of the questions I wanted to ask you is why you didn't get it in earlier. But I understand that the timing was not fortuitous from your viewpoint. Sure. But the timeliness was a discretionary call by the examiner. And I think the examiner found that it was timely. I think that what we're pursuing in this appeal is not kind of a timeliness dispute with the examiner's timeliness finding. He did find it timely. What we're saying is that the examiner should have considered all the trial evidence. But once the examiner found it was timely, the examiner couldn't then say, well, I'm just going to consider 100 pages of the trial transcript. The examiner would have had to look at all of the trial transcripts. Can I ask you about that? You recite a number of times in the brief that the examiner limited you to 100 pages. And what you cite doesn't say anything about number of pages. And it doesn't suggest an artificial limit. I had understood, tell me if I'm wrong, that what the examiner said was, I have your submission. It cites a number of pieces of evidence from the Delaware trial. As in this court, submit as attachments to that, please, only what you cite and a couple of surrounding pages. Don't submit giant amounts of evidence that you don't even cite. What's wrong with that? Tell me if that's A, if that's not in fact what happened, and B, if that's what happened. I don't understand that there was any refusal to examine any evidence. I think the situation you posited would be fine. I think that's what happens in this court all the time. When you're compiling the appendix, you write a brief, you cite specific pages of transcript, and you just include in the appendix what you're citing, plus or minus a page or two. That's not what happened here. Unfortunately, the PTO record isn't very clear on the examiner's, kind of where the examiner made that decision. My understanding is that it occurred at an interview, at the February 2009 interview, after the examiner had originally refused to consider all the evidence. Then there was an interview, and the examiner communicated to counsel for SRI the 100-page limit. I guess I find it a little difficult for us, and indeed for the board, to say something went dramatically awry in terms of an artificial limit on the admission of evidence when we don't see any documentary record of there being such a limit. Right. I mean, two responses. One, I think in the board's initial decision, the board assumed the existence of the 100-page limit, and proceeded to act based on that. So I think in this court, we should take the 100-page limit as a given, based on what the board said. I think the second point here is that the whole issue, and it kind of goes back to the timing issue, but it defied review in that you've got these multiple avenues in the office. Again, my understanding, at least as a procedural matter, from what the PTO tells us, is that you did have an avenue to challenge any limitation on what evidence you could submit, if indeed there was one. But that avenue did not run through the board. It rather ran through someplace else in the PTO, filing a petition with the director or something like that, and you didn't do that. So we did do that, Your Honor. At the same time that we filed the 100 pages of limited trial testimony, I'm sorry, I also filed a renewed petition to the director. That was in March of 2009, I believe. The director didn't rule on the petition for over a year. In the meantime, the briefs had been submitted to the board in June and August of 2010, and then the director ruled on the petition after the briefs had been submitted to the board on August 19th. And what the director said was that he didn't address the merits of the petition. He said, well, the petition is premature because the examiner has not yet decided whether to limit the evidence. Okay, but then you didn't pursue what I guess would be a district court review of the director's decision. I mean, if your core argument here is you had evidence, you tried to get in front of the examiner. You couldn't do it. That was improper. You had a means of pursuing a challenge to that. And at some point, you stopped pursuing that challenge. So I think we pursued it in the sense that after the director refused to rule on the petition, then argument proceeded before the board. And then the board issued its opinion where much of the reason that it discredited the limited trial evidence was because it didn't have the full record. And we cite in our briefs where the board starts out in saying, you know, the board lacks context. We lack information about witness qualifications, about potential adverse material in cross-examination. Once SRI had the board's decision, we immediately filed for reconsideration at the board, explained the exclusion of evidence. And so I think in that way, the issue was preserved. It's similar. Well, yes, except that surely you knew at that point that the board was not the agency that you go to to review the director. I don't understand the director's decision, to be perfectly honest with you. I don't understand why the director said what he did a year later. But that issue, you didn't bring to us. You could have brought that issue to us by suing for mandamus action in the district court. And then if you lost there, taking an appeal here, and if you were up here on that appeal, I'd be probably somewhat sympathetic. But you didn't do that. You went to the board. The board can't overrule the director. The board works for the director. Right? Right. And now you're up here asking us to overrule the board. But we only deal with what the board decided. We can't reach out and deal with things the board didn't decide. So I'm puzzled as to what you think we can do for you. Help me understand that. Sure. So a couple things. First, on the mandamus action, I think SRI was in between a rock and a hard place because it's unclear to me what the mandamus petition should have looked like. Because the director... No, that's your problem. The director didn't just refuse to enter the evidence. He didn't rule on the merits at all. And so with the mandamus petition, just to then, you know, please, we would like the director to rule. And then in the meantime, this appeal is proceeding, you know, from the board to this court. And perhaps the mandamus action is behind this appeal. And we can't actually get relief until after this appeal has been decided. Well, you could come up here and say, please don't decide this appeal. We've got a mandamus action underlying their decision. And I don't know what Judge Newman would order us to do. She might be sympathetic with that idea. Well, what I've been thinking about all this. Here we have these concurrent proceedings. We have an ancient history of when there's some kind of squabble with what the examiner has done. You go to the director. You get an instant resolution of the squabble. And now historically, if you really feel that you can't live with that, you go to the district court for procedural resolution. Not substantive, but procedural. A lot has happened since then. The law has changed. We have now the Supreme Court saying that the Federal Circuit had it wrong in separating the procedures of the Patent Office from the APA and a lot of other things. And as I looked at this, I thought that this is an example of if we require and continue to require what history supports. Don't want to make a speech about it. But here you have another five or six years of litigation in order to get a few more pages of evidence into the record. And I was thinking, in fact, and I'll be interested in the director's view on all of this, to say that the applicant is prohibited from raising this issue before the board, that there was evidence that was, for one reason or another, excluded. And I appreciate that you didn't try and divert us into this area. But accepting what happened, there is something sympathetic about what the examiner did here. We, too, are not so interested in receiving an entire record. We require that it be limited only to the pages that are cited in the briefs, plus we finally relented in one page on each side. Was that standard met, pretty much, in your relationships with the examiner and building the record in the office? I don't think it was, Judge Newman. I think, first, there was the 100-page limit, which was communicated to the SRI at the interview. Secondly, the reason that SRI wanted to submit more pages is because we wanted to give the agency context and we wanted to give the examiner context. The examiner says, well, no, I don't want context. I want this limited record. Then we go up to the board and one of the first things that the board says, in its opinion, is it says that we lack context. And then the board, when it's evaluating the evidence that was allowed into the record on several occasions, says, well, we don't understand what this trial testimony means because we don't have enough or we don't have the underlying trial exhibits. And we cite some examples of this in our brief. The testimony from Dr. Jew, one of the prior art inventors, where the board says at A-19, the Jew testimony is difficult to evaluate without more context, particularly since it extensively refers to unidentified exhibits in the record. What should the board have done? Are you saying that the board acted arbitrarily, capriciously, by not doing something? What do you think they should have done? I am, Your Honor. I think what they should have done is they should have remanded to the examiner and instructed the examiner to allow the entry of all the trial evidence, to make a decision based on that trial evidence, and that then that decision with the full record should have been observed. When you say allow the examiner, the examiner said, I've allowed all I want to see. But the problem was that the board wanted to see more. Could the board have ordered the examiner to take in all that other evidence? Is that what you're saying? I think it could, Your Honor. I think either that or the board could have directed SRI to submit the evidence if the board wanted to look at it directly. I mean, I think the board has a choice one way or the other on that. But I think what did happen here is that we had this restricted record where the board is then affirming the merits of the rejection based on that restriction. And that's where, you know, this line between procedure and substance gets a little blurry. And some of the prior cases recognize this, the Searles case, the Berger case. But I think they say two things. One, when the issue goes to the heart of the rejection, it's substantive. And this is something that the board can look at and this court can review. And secondly, when the director doesn't act, doesn't act on the petition, that again, there has to be a mechanism for that. And the mechanism can be that the board can look at the issue and then this court can review the board's decision. All right. Well, now we've exhausted your time. Is there anything in the two or three minutes that you want to tell us about the substance? I did want to talk about claim construction a little, if Your Honor. All right. Let's make it five minutes on claim construction. Thank you, Your Honor. So, you know, the issue here is that all the claims require the step of building statistical profiles from at least one measure of the network packets. And so the claim construction issue is, well, what does the system, or what do the claims require one to build the statistical profiles from in order to infringe the claim? SRI's position is that the network packets have to be used as the input stream for building the statistical profiles. But all you had to do is put that limitation in the claim and there goes the objection. So we think that that limitation is in the claim by virtue of the plain meaning of the term. But that's the whole principle of this broadest reasonable construction. If there's something that seems to be, through the examining process, to be arguable and you say we really, this is what it's limited to, and you decline to put it in the claim so that the vast public out there, unless they order the record, doesn't know you've made this representation. To tell us now to construe the claim sufficiently narrowly so that they're patentable while declining to put that limitation in the claim is not helpful. I think the problem for the patentee in this situation, Judge Newman, is that we think the requirement's already in the claims. We think the plain language of the claim supports this requirement and we explain at pages 25 through 30 of the blue brief. Some of the dependent claims support the requirement, show what the language means in the independent claim. If we amend the claim, then we get into an issue of intervening right. And there's issues about whether there was a change in scope. Respectfully, we don't think that there was a change in scope. We think the claims have always meant that the network packets are used as the input stream. And so when you get into requiring the patentee to amend the claim, then you open up a new can of worms about, well, is this a substantive change or was this in the claims originally? And we think the better course, frankly, is to construe the claim consistent with their plain meaning and adopt our construction. I'd also note... But the board said that that's what they had done. And even construing it with your claim construction,  in order to find anticipation under that claim construction. So your real objection is to what they found in NIDES, isn't it, rather than claim construction? I don't think it is, Your Honor. I think the board's opinion is ambiguous in terms of what construction they actually adopted. It was vigorously argued between us. Well, let's assume they adopted yours. Then the issue would be, did they find in NIDES sufficient coverage to include that construction? Right. Is that right? That would be right. I think the problem is... Do you disbelieve the board's finding on that score? I do, Your Honor. I think the ninth paper discloses a system in which audit records are used as the input stream for building the statistical profiles. And I think, just jumping back to assuming the board's claim construction, the problem is that it's really the board in the first instance that has to make that finding, has to compare the properly construed claims to the prior art. And so, here I think the board did adopt the examiner's claim construction. I think it's ambiguous that this court needs to remand and ask the board to make an explicit claim construction. You know, in the board's opinion, we talk about where we think they adopted the examiner's claim construction. At A4, the board talks about the step of receiving the network packets and talks about how it would be enough to infringe the claims if the system had information about the packets when it was building the statistical profiles. Later, when it's discussing the NIDES reference, the board talks about how the prior art disclosed a system that was adapted to work with network packets. We don't think that these things fit into the claims as properly construed. SRI's claim construction is narrower than a system that simply has information about the packets or is adapted to work with the packets. The claims require that the packets themselves are used as the input stream for analysis, as opposed to the audit records in NIDES, which, while they reflect information about the packets, the NIDES system proposed using audit records as the input stream. So, we would urge that, to the extent that there's any ambiguity about what the board did, that this court vacate and remand for a proper claim construction. Okay. Thank you, Mr. Countryman. We'll save you a little time. Thank you, Your Honor. Mr. Weidenfeller? Thank you, Judge Newman, and may it please the Court. I'd like to start with the procedural issue, if I might. And I'd like to take a step back and spend a few minutes going through what we think the record shows here. And what we think the record shows here is that there was an apparent agreement between SRI and the examiner about what the SRI would be permitted to submit after the final office action and after the final rejection. It's not in the record. You're saying an apparent agreement? We should assume they agreed to 100 pages because SRI submitted 100 pages? No, we're saying that at A12876, this is the interview summary written by SRI itself. It says, it doesn't say anything about the examiner imposing a 100-page limitation. What it says is that the interviewing examiners indicated their appreciation for our concerns, that is, SRI's concerns about wanting to provide additional evidence about what had happened at the trial to the examiner, but also indicated their struggle with the sheer volume of the exhibits submitted. The examiner felt overwhelmed by the over 1,600 pages of additional information that SRI had provided. In fact, the interviewing examiners directed Patentee's Counsel to file only the pages upon which cited testimony was provided. That was cited testimony that was provided with SRI's submission on December 4th. They provided a 30-page response to the office action in which they cited a number of pages. It was approximately 100. We've had most of page or two before or after the same, such that the Patentee should aspire to produce the smallest appendix possible. And as Judge Taranto's question pointed out, that's exactly what the ordinary practice is in this court. It's the sort of thing that is normal. If you cite to a voluminous transcript, you don't have to provide the entire transcript. You don't have to make the fact finder go through the entire transcript. But that makes sense. So then we get to the board and the board says, we can't understand what this is all about because it's truncated. Yeah. And then the question is, what should the board have done? Have asked for the additional pages that weren't included or asked the examiner to review? It seems that we have focused on not so much the request to somehow restrict the record to something that a busy examiner can use, but gets to the board that doesn't have the background with the particular application that the examiner has. So the board feels that they have an inadequate record. Then what? Right. Well, in front of the board, in the board's initial decision, it was responding to the footnote in SRI's reply brief saying, we were limited to 100 pages. And they said, wow, you were limited to 100 pages. That seems unfortunate. We wish you could have submitted more. When they got the rehearing petition, they looked into it a little more closely. And at pages 830 to 831, the board actually goes through what we've been talking about and says, well, actually, it looks like what the examiner did was entirely appropriate. It looks like you reached an agreement about what sort of information, what sort of evidence you're permitted to submit, along with your after-final office action response. Well, if we agree with your version of the facts, what does that, what's the significance of our agreement with your version of the facts rather than, I'm not sure I want to get launched into the factual argument, but let's assume for the moment we agree with your version. So what? So I think that what Mr. Countryman said on behalf of SRI is that the board here assumed there was an arbitrary 100-page limitation, and I'm trying to say that I'm not sure that's clear. But what happens, no matter whether... Are you arguing that he, in a sense, has waived, or his predecessor or whoever was handling it for them, then waived any argument about how much evidence was available to go in? I think that SRI failed to challenge, through the appropriate channels, the procedural decision by the examiner deciding how much evidence he would allow. I think that's the issue in the case, but I don't think it matters whether it was 100 pages or unclear how many pages. They're saying they are entitled to more pages, and you're saying, putting aside your factual dispute, I assume you're saying that, yes, maybe they were entitled to 2 million pages, or whatever, but they just didn't go about it the right way. At least that's what I get from your brief. Well, I think that even if they were entitled to a certain additional number of pages, what they should have done, and what the MPEB tells them to do, what this court's case law tells them to do, is to file a petition to the examiner's supervisors. And they did file a petition under Rule 116, but that was only after they'd been told that there is no such thing as a petition under Rule 116. What you need to do, the petition decider said, is file a petition under Rule 181 to the director, asking for a supervisory review of what the examiner did. Which they then did. Well, no, then they filed a renewed petition under Rule 116, and with it they attached these 100 pages of trial transcript. And the examiner, shortly after receiving that petition and that submission, entered all of those 100 pages into the record, and said, because you culled through this voluminous trial transcript and gave me only the important things, this is a timely submission of evidence, and I'm going to accept it under Rule 116 as an after-final office action submission. When faced with that fact scenario, the decider of the second petition said the petition was moot, because the examiner had given SRI everything it appeared that SRI had wanted. It also said it was premature, because the petition had been submitted along with these 100 pages of evidence. And they said you should have waited for the examiner to decide whether or not to give you what you wanted. And that's exactly what the examiner did. The examiner admitted everything that you submitted with your petition into the record. Can I return to something that I think Judge Newman was discussing with Mr. Countryman? Once the Board was looking at this, assume that the Board thought to itself before it wrote its opinion, saying, we wish we had more context. What could the Board have done? The Board is limited under 35 U.S.C. 134 to the record that is compiled in the examination process. And that's what it said in its rehearing decision, is we can't have done anything. It couldn't remand, and I don't mean that in a particularly technical sense, in whatever the substance of, send it back to the examiner, we're having trouble understanding the issues that we are being asked to decide. Can you please provide more context? Is there a procedural mechanism for that substance? I'm sorry to interrupt, but I don't think that there's a procedural mechanism for the Board to send it back to the examiner once the examiner has made this sort of determination. What the Board said is, we are here to decide the substantive issues of patentability. The examiner works for a supervisory examiner, a group director, and ultimately the director of the agency, to whom we also report. You're saying it's prohibited? I thought the Board could always, I know if there's a new ground, then that's in the record, that they can send it back to the examiner. Yes, if there's a new ground. But maybe an inadequate substantive record that's readily remedied? You're saying that they're absolutely limited to what was before the examiner, unless the Board wants to raise a new ground of rejection? Well, I'll directly answer your question first. There is a mechanism under Rule 41.33, by which, if there's a showing of good cause, the Board can allow additional evidence into the record directly in front of the Board. Without sending it back? Yes, and I don't want to suggest what the Board would have done in this particular situation. Under that rule, it's a good cause requirement, and the examiner had made a determination. I don't know what the Board would do in that situation. But the Board is not able to revisit the examiner's determination to limit the record under Rule 116 after a final office action. That's something that the only avenue of review that the agency provides is by petition to the director under Rule 181. And is it right that, in this case, SRI did not ask the Board itself, or did it ask the Board itself to take new evidence, whether under 41.33 or anything else? I did not see anything in the record. There's nothing in the record that suggests that. I suppose the Board could have simply ruled against the director, because the examiner isn't really before the Board. It's the director's decision, affirming whatever it is the examiner did. I suppose the Board could simply have said, on this record, SRI wins. Right. The Board could have said, we think that this evidence is sufficient to overcome... It was a re-exam, wasn't it? Yes. And if the Board had... Did the Board know what the court had done, what the outcome of the trial was? Yes. I assume they did. That was presented to the Board in SRI's briefing, and it had a portion, not all, but a portion of the trial record in front of it. And one thing I do want to point out to make clear is that Mr. Countryman said there were similar validity issues in the district court and before the agency. They were not identical. In fact, NIDES was not even considered at all during the trial in the district court. So the issue of whether or not NIDES anticipates any of the claims of this patent were not at all at issue in the trial. So none of the evidence really went directly to the enablement of NIDES or whether NIDES anticipates the claims at issue in this case. So the substantive issue... Let me see if I understand where we actually are in this case. The substantive issue before this court at this time is regardless of how uncomfortable the Board was or how puzzled they were by the record, whatever, they went ahead and ruled against SRI and found that all of these invalidity decisions by the examiner were to be affirmed on that record, substantial and all of that. Now it comes to us then on the substantive question of whether given the Board's... the record before the Board and now the record before us, did the Board act arbitrarily, capriciously, or in the absence of substantial evidence in the record? Do I understand this correctly? That's right, Your Honor. Given the record as it was formulated by the agency and sent up, that's what this court reviews, and it reviews that record for substantial evidence. Now there is an argument about claim construction. In our view, the Board did look at whether or not these network packets were part of the input stream, and I think some of the flexibility perhaps and perhaps the divergence between SRI and the agency's position is what the input stream means. Whether the network packets have to go without any intermediate step into the statistical engine, the Board interpreted it as saying there could be an intermediate step where you're perhaps culling packets that you don't need to bother looking at. But these are questions of law, questions of obviousness. Are you saying that we must refer to the Board on a question of law? It's a primary rejection on appeal, and most of the claims were rejected for anticipation, not for obviousness. So it's a question of fact. Because we call anticipation a question of fact, and obviousness a question of law, if we think that the Board erred in its question of law, is the position of the Director that questions of law also receive deferential review? Well, I... Claim construction is a question of law. Yes, claim construction is a question of law, and it may or may not, if this Court will decide to let it balance. And claim construction is the issue that Mr. Countryman has pressed before us, so assuming that we reach it, you're saying that we defer on this question of law as well? Well, there is a bit of deference under the broadest reasonable interpretation standard, meaning that this Court looks to what the USPTO's determination regarding claim construction is, and decides whether or not it was reasonable. If it's a question of law, it's right or wrong? Well, that's not the legal standard that this Court has historically applied, and long applied to the USPTO in its determinations regarding claim construction. Whether it's reasonable, it has to... Oddly enough, we ask the District Courts a different question than we ask the PTO, is that right? That's right. Our question says, did you behave reasonably? Some precedent. And as you know, we are looking at the Cyborg case, which pretty much established that for questions of law, we review the question of law for correctness, wherever it comes from. But we do have other statements that conflict, which is why we hope to straighten it out. But I don't think this Court needs to reach the claim construction standard. We think that under any claim construction standard, what this claim requires is that network packets be collected, and that a measure based on those network packets be determined by the statistical engine. From reading NIDES, I have less trouble with that question than I do with the fact that the claim clearly calls for at least one long-term and at least one short-term statistical profile. But I don't find anything in the NIDES document that specifically refers to short-term and long-term. It clearly refers to looking at the packets. But I don't see that particular distinction supported in the NIDES document. Am I missing something? It doesn't expressly, at pages 3700 to 3701, when it's talking about the network version of NIDES, how it would work, it doesn't expressly talk about both short-term and long-term profiles. But it does say that throughout NIDES, it's talking about a statistical engine in the earlier pages of the report. In there, it talks about separate short-term and long-term profiles and comparing them. Can I take one minute more and ask you to address the question that Judge Newman raised earlier, which is, does it still make any sense for this separation of procedure and substance before the PTO boards to go off on one track for procedure and another track for substance? And furthermore, the line between those two is rather blurry because one could make the argument that this procedural issue of whether they were entitled to get all the evidence in of the trial, which went the other way, really doesn't go, doesn't that really go to the substance of what the board decided, in which case the board was wrong if we blur that line on his side rather than on yours. Does that whole thing make any sense anymore? I think it does make sense, Your Honor, and the reason why is not only for the long history that the agency has worked under and the structures that the agency has built under that long history, but it also makes sense that the examiner's direct supervisor or a person above the examiner's direct supervisor is the one deciding whether or not the examiner is acting properly in a particular situation. A situation like what evidence to admit to the record after a final office action. A situation like whether or not to allow an amendment after a final office action. Those could be called substantive because what could be more substantive than what claim is going to be presented to the board for a patentability determination? But they're really procedural. They're the sorts of things that the examiner has said, I've been looking at these claims all along with this evidence all along. I issued my final rejection and now you're trying to come to me with something new and if you can show a good reason why you didn't present it to me before I'll let some of it in or all of it in but when the examiner's making a discretionary determination like that what we want is the supervisory examiners and the group directors and ultimately the director of the agency deciding what examiners should be allowing and what examiners should not be allowing. Not having it go up to the board with either a really broad record or a really cribbed record and the board has to decide how much of it it really in the first instance would have wanted to allow. You're making the analogous argument to the chiefs, the chairman of the joint chiefs who made yesterday to Congress, aren't you? I certainly would not want to get into that here, your honor, if I may avoid that question. Okay. Any more questions for the director? I'd like to when there's time someday to argue with the office about why these procedures were according to your system, this applicant, he had to go through you tell us now, two layers of supervision. Then it goes to the director who sees no time burden at all, takes whatever time to respond and say no, you're wrong. From there it has to go to the district court of some sort. There's another two or three years. From there it isn't so clear whether on a procedural matter from the district court he would go to the D.C. circuit or back here. Meanwhile, all of these other procedures are taking their path. The issues affect the substantive outcome. We'll take that up some other time. Thank you. Okay. Mr. Countryman, you have three minutes for all of this, but we'd like to rewrite statutes. That's what I was thinking. Thank you, Judge Newman. Just a few points. First, Judge Toronto to respond to your question about whether the S.R.I., whether S.R.I. asked the board to do anything. So on rehearing, S.R.I. asked the board to reopen the prosecution to, in the alternative, reopen the prosecution to consider the full trial record. That's at our rehearing petition, page A13740, about the middle of the page. Second, just to go back to one of the solicitor's earlier points, he suggested there was an agreement between S.R.I. and the examiner to limit the trial testimony. We disagree with that. If you look at the interview summary that he cited at A12876, I believe, it says that the examiner directed S.R.I. to file limited trial testimony. I think the fact that the examiner directed S.R.I. to do so shows that the examiner was making a ruling. And as the solicitor pointed out, our submission was around 100 pages, which is consistent with 100 page limit. So I don't think there was an agreement between S.R.I. and the examiner. There was no waiver there. S.R.I. was simply doing the best it could. It said, well, something is better than nothing, and so we'd like to submit the 100 pages, but we'd also alternatively like to renew our petition to the director to seek entry of the whole trial record. Another point the solicitor mentioned was the differences between both the validity issues at issue in the district court case and at the PTO. There were similarities between the two cases, though. The prior art that was in front of the jury was the GNOW reference, and the jury found that that reference didn't anticipate. The dispute at trial about that reference was the same as the dispute about NIDES. The whole issue was whether the GNOW system disclosed using audit records or network packets as the input stream. S.R.I.'s inventors, one of whom was also an author on the NIDES paper, testified extensively about the differences between the two. A lot of that testimony was directly overlapping with the issues that were before the agency, both in terms of the difference between the two systems and whether NIDES was enabling. Also, some of the rejections in this case of the dependent claims are obviousness based on the Emerald paper. The Emerald paper was also authored by the inventors of the patent institute. They testified extensively about it at trial. It was also a validity issue at trial surrounding the Emerald paper. And opposing experts at trial also testified about the Emerald paper and about this distinction between audit logs and network packets. And finally, if I could just make one last point on the claim construction, I think we heard the solicitor say that there really is a dispute. The board took the view that there could be no intermediate steps between using the network packets and doing the statistical analysis. We think under the proper construction that the network packets themselves have to be used as the input stream. And so there is a claim construction debate. It seems clear that the board applied a different claim construction for SRIs. We submit that claim construction is an issue of law. Whether it's a reasonable construction is an issue of law. And we think here that the agency's claim construction was unreasonable as a legal matter. And so, even putting aside the exclusion of evidence, we'd ask you to vacate and remand under the proper claim construction. Thank you. Thank you. Thank you both. The case is taken under submission.